## Case No. 6,278.

HAZARD v. HAZARD et al.

[1 Paine, 295.] [1]

Circuit Court, D. Vermont. May Term, 1820.

JAIL BOND—ESCAPE—LUNATIC—LIABILITY OF SURETY.

1. The condition of a bond that a prisoner "shall faithfully and absolutely remain within the limits of the jail, and not depart therefrom," &c. is not broken by the escape of the prisoner, while in a state of insanity.

2. The liability of the sureties for an escape is not coextensive with that of the sheriff. As it regards the latter, a prisoner on the limits is supposed to be in his immediate custody, and the escape of an insane prisoner, therefore, as much a negligent escape as any other; and he is not allowed to excuse himself where he might so easily collude or be imposed upon. But there is no analogy in these respects between a sheriff and the sureties.

[Cited in Taintor v. Taylor, 36 Conn. 248.]

At law.

D. Chipman, for plaintiff, cited 4 Durn. & E. [4 Term R.] 789; 1 Strange, 429; 2 H. Bl. 112; 10 Mass. 206; 4 Mass. 361; 2 Bos. & P. 362.

C. Marsh and D. Edwards, for defendants.

LIVINGSTON, Circuit Justice. Robert Hazard, one of the defendants, was committed by the marshal of the district of Vermont, on a capias ad satisfaciendum issued by the plaintiff in this suit, to the common jail of the city of Vergennes, and being admitted to the liberties of the prison, executed to the marshal, together with the other defendant Robinson, a bond, with a condition, that the said Robert "should faithfully and absolutely remain within the limits of said jail-yard, and should not depart therefrom until he should be lawfully discharged, without committing any escape before such discharge, or doing any act by which the said marshal should be damnified in consequence of admitting the said Robert to the liberties of said prison." After being thus admitted to the liberties of the prison, and after the making of the bond, the defendant Hazard became insane, and while in that condition, left the said liberties, and went at large. The only question arising on the pleadings and evidence in this case, is, whether the act on the part of the debtor be an escape within the meaning of the condition of the bond on which this action is brought.

On the part of the plaintiff, it has been said that at common law, a sheriff cannot set up insanity as an excuse for the escape of a prisoner committed for debt, and that the defendants having become surety to the marshal, have substituted themselves in his place, and cannot be in a better situation than he would have been. None of the cases to which the court has been referred, decide that in-

---

[1] [Reported by Elijah Paine, Jr., Esq.]

sanity of the party may not be pleaded to an action against a sheriff for an escape. The cases cited from Strange, and Durnford and East, both turned on a rescue—and in that of Steel v. Allan [2 Bos. & P. 437], Lord Eldon only refused to discharge a lunatic who had been arrested on common bail. But if the law be so, as it probably is, there is very good reason for it. A prisoner in the hands of a sheriff, is committed to the walls of a prison, from which, if proper care be taken, it is as difficult, if not more so, for a lunatic to escape, than for one in the full enjoyment of his faculties. It would, therefore, be as great negligence in the sheriff to suffer such an escape as that of any other person, and for such negligence he would be liable. The law has not left him to decide in what case a party, after being committed, shall be discharged; and were it put in his power to discharge one who had become insane after commitment, or to excuse himself on that ground, he might be imposed upon himself, or he might collude with a debtor to escape from prison. Some provision seems necessary to enable the friends of a person in that situation, by some legal proceeding, to take him from the sheriff's custody. Until such provision, however, be made, it is better to let a sheriff remain chargeable for the escape of an insane debtor, than to permit such insanity to be set up as a defence, or to leave any thing to the discretion of a ministerial officer on this subject. But there is no analogy between the case of a sheriff and a surety on a jail bond, or at any rate too little to apply to the latter, the rules which it has been found necessary to adopt, in relation to the former. In the one case, the prisoner is literally, and not merely by construction of law, in the custody and keeping of the sheriff—who is provided with ample means for securing his person. In the other case the prisoner is at liberty within the limits of the jail-yard, and not under the control or in the keeping of the surety. He cannot, if in execution, be taken by his bail if he goes beyond those limits, although the legislature has given the surety a right to exonerate himself if the commitment be on mesne process, by a surrender of the principal. In the one case, too, the liability must be tested by decisions, which have been made from time to time in relation to the office of sheriff. In the other, the court has no right to look to any thing but the condition of the bond, on a reasonable construction of which, must depend the extent of the obligor's responsibility. Its engagement is, that the debtor shall faithfully and absolutely "remain within the limits of the jail-yard, and not depart therefrom until he be lawfully discharged." Although it is not said that he shall not voluntarily depart, it is plainly implied, not only from the nature of the undertaking, but from the obligation which is imposed on the debtor, faithfully to remain within the limits of the yard. The obligation can be observed only by a rational being, who can discriminate between fidelity and a violation of duty; and it would seem necessarily to follow, that no man deprived by the visitation of Heaven of all sense of right and wrong, could do any act of himself which could be said to be inconsistent with a faithful observance of the condition of the bond. On any other construction, a surety would be rendered liable by the act of God, and not by that of the party, the former of which, is never permitted to operate to the injury of any one. It is on the good faith and integrity of the debtor that his surety relies—it is for a moral agent, for whom he enters into the contract. But if his liability were to continue after the extinction of the moral sense, no one would ever be safe in signing a bond of this nature; and whatever reliance might be placed on the honour and good faith of an unfortunate debtor, who rarely has any other security to pledge, his friends would be compelled to suffer him to be immured within the walls of a prison, rather than undertake for him, at a peril which no human foresight could guard against. The principal debtor is also a party to this bond, and would be liable over to his surety, if he had not faithfully remained within the limits of the jail-yard. But an action against any man for doing, after he had became insane, an act, which in his senses he had covenanted not to do, would be a novelty, and could hardly be sustained. If this were a suit on a bond or recognizance, which had been entered into for the good behavior of Hazard, and it appeared that the breach of the peace which was alleged as the forfeiture, had been committed in a state of insanity, can it be doubted that it would not be a valid defence? For if the party who committed the offence could not be punished; surely he who had become surety for his preserving the peace, ought not to suffer. The judgment in Baxter v. Taber [4 Mass. 361], in Massachusetts, proceeds on the same principle. Although Holbrook, the prisoner in that case, was not insane, the court consider that some agency on the part of the debtor, must be employed to constitute an escape within the meaning of such a bond, and, therefore, considered his surety not liable; it appearing that the debtor was carried by others, in consequence of a sudden illness, to a house which was off the limits, where he languished and died, it being the opinion of his attending physician, that he could not be carried back to prison, without manifest danger of his life; and yet, if this had been done to a person confined in jail, it would have been an escape. This is one case, and perhaps rescue is another; and others might easily be put, in which the sheriff would be liable for an escape; and yet the condition of such a bond as this, under similar circumstances, would not be considered as broken. There must be judgment for the defendant.